# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO.

HEALTH & BEAUTY TECHNOLOGIES, INC., AND
MEDI-BUILD INTERNATIONAL CORP.

      Plaintiffs,

v.

MERZ PHARMA GmbH KGAA, AND
MERZ NORTH AMERICA, INC.,

      Defendants.

_____/

## COMPLAINT

Plaintiffs Health & Beauty Technologies, Inc. ("HBT") and Medi-Build International, Corp. ("Medi-Build") (HBT and Medi-Build are collectively referred to as "Plaintiffs") hereby sue Defendants Merz Pharma GmbH KGaA ("Merz Pharma") and Merz North America, Inc., ("Merz NA") (Merz Pharma and Merz NA are collectively referred to as "Merz"), and state as follows:

### Parties

1.    Plaintiff HBT is a Florida corporation located in and conducting substantial business in Miami-Dade County, Florida.

2.    Plaintiff Medi-Build is a Florida corporation located in and conducting substantial business in Miami-Dade County, Florida.

3.    Defendant Merz Pharma GmbH KGaA ("Merz Pharma") is a German corporation that does business throughout the United States including having had business dealings and negotiations with Plaintiffs that, in part, took place in Miami-Dade County, Florida.

1

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

4.     Defendant Merz North America, Inc. ("Merz NA") is a North Carolina corporation that does business throughout the United States including having had business dealings and negotiations with Plaintiffs that, in part, took place in Miami-Dade County, Florida.

### Jurisdiction

5.     This is an action for monetary damages, including pre-judgment interest, and court costs among other claims.

6.     This Court enjoys subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest, attorneys' fees and costs.

7.     This Court enjoys personal jurisdiction over the Defendants because the false and misleading statements made by Defendants, as well as part of the negotiations and business dealings, were transmitted in or to Plaintiffs who are located in the Southern District of Florida, and Defendants were responsible for paying the fee, which Plaintiffs are suing for, to Plaintiffs in Miami-Dade County, Florida, and Plaintiffs remain residents of Florida.

### Venue

8.     This Court enjoys venue under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiffs' claims transpired in the Southern District of Florida, including portions of the written and other negotiations that comprise the parties' contract and business dealings as well as statements directed by the Defendants to Plaintiffs in the Southern District of Florida, and the fact that Defendants were to pay the fee, which Plaintiffs are suing for, to Plaintiffs in Miami-Dade County, Florida.

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

## General Allegations

9.     During the 5-Continents Aesthetic Medicine Conference held on September 18-21, 2013 in France, Michael Polakov, the President of Medi-Build and HBT, met with Matthew Likens, the President and CEO of Ulthera, Inc., regarding Ulthera's interest in being acquired by a pharmaceutical company in order for Ulthera to continue its growth and inherent profitability.

10.     At the time of that meeting Mr. Likens already knew Mr. Polakov and was aware that he did extensive consulting in the Aesthetic Medical Field, including for mergers and acquisitions, and of his excellent international reputation throughout the medical aesthetics field.

11.     During the course of the 5-Continents conference, Mr. Likens and Mr. Polakov had several discussions regarding Ulthera, and Mr. Likens advised Mr. Polakov that although Ulthera had made it known to several companies that it was interested in being acquired, as of that time Ulthera was not engaged in any substantive discussions or active negotiations with any potential acquirers, be it pharmaceutical companies or other acquisition entities.

12.     Accordingly, Mr. Likens and Mr. Polakov reached an agreement at the conference whereby Mr. Polakov, through his companies Medi-Build and HBT[1], had a non-exclusive engagement to market Ulthera to potential acquiring entities, including pharmaceutical companies.    In order to avoid limiting Plaintiffs' efforts, Mr. Likens specifically and purposefully did not list or exclude any potential acquiring entities from those upon whom Plaintiffs would provide their efforts and then be entitled to a fee if one of those entities acquired Ulthera, based upon Mr. Likens' position that at that time Ulthera was not in any substantive discussions with any entities about being acquired.    Mr. Likens specifically expressed that he

_____

[1] At the time of the initial meeting, Mr. Polakov referenced HBT as an entity being formed to segment his work in the mergers and acquisitions area, but it was not formally created as a legal entity until March 2014.

3

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

did not want to limit Plaintiffs from bringing any interested entity to the "table" once and for all, even if that included entities that may previously have had preliminary talks with Ulthera.

13.    Ulthera agreed that Plaintiffs would be entitled to a fee commensurate to the standard industry fee (which ranges from 1 to 5 % of the acquisition price) if Plaintiffs successfully found an acquiring company; but based upon Mr. Likens' desire, it was understood and agreed that payment of the fee should and would be structured as part of the acquisition deal and be funded by the purchasing entity, regardless of whether the payment was routed through Ulthera or not.  For that reason, Mr. Likens asked Plaintiffs to please register the name of any specific party(ies) when, and if they, expressed a definite interest in negotiating an acquisition, so that Plaintiffs would be properly involved in the transaction.

14.    Mr. Likens and Mr. Polakov shook hands to confirm their oral agreement.

15.    A few days later, Mr. Polakov spoke with Mr. Jean-Yves Coste, the Healthcare Director of Michel Dyens & Co., a French based and New York branched Investment Banking Company, that generally represents acquirers within the healthcare and cosmetic medical field. Mr. Polakov, through his companies, had previously collaborated with Mr. Coste on other potential acquisition deals.  Mr. Coste informed Mr. Polakov that he was in rather continuous discussions with a pharmaceutical company by the name of Merz Pharma that was looking to acquire new technologies.

16.    Mr. Polakov on behalf of Plaintiffs, and Mr. Coste on behalf of Michel Dyens & Co., agreed to work cooperatively together to provide Merz Pharma and its affiliates with targets for acquisition.  It was discussed and understood between Mr. Polakov and Mr. Coste that Plaintiffs would be entitled to a fee within the range standard in the industry of 1 to 5% of the acquisition price for their services, and that Michel Dyens & Co. would similarly be entitled to

4

PATHMAN  LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

seek the same fee structure in connection with its representation of the acquiring entity, and that those fees would be paid out of the purchasing entities' funds.

17.     Plaintiffs immediately proceeded to provide Mr. Coste with extensive details on several potential target companies, including Ulthera.

18.     On September 26, 2013, a mere one week later, Mr. Coste sent his initial email to Mr. Hans-Jorg Bergler the then Head of Corporate Development at Merz Pharma, and Mr. Philip Burchard the CEO at Merz Pharma, discussing Ulthera, Inc. and providing them with a profile on Ulthera as well as asking whether they would be interested in a formal meeting with Mr. Likens. A copy of the September 26, 2013 email is attached hereto as Exhibit "1".[2]

19.     After the September 26, 2013 email, Mr. Coste engaged in further communications with Mr. Bergler and Mr. Burchard, including an October 30, 2013 email to them in which he again discussed Ulthera and three other potential target companies and proposed introductions to the CEO's of those companies, as well as proposing a meeting with Mr. Bergler and Mr. Burchard in Frankfurt, Germany to provide them with more information. A copy of the October 30, 2013 email is attached hereto as Exhibit "2."

20.     Mr. Bergler responded by suggesting a telephone conference with he and Mr. Burchard to which Mr. Coste agreed. At that time Mr. Coste also introduced and advised by email that Mr. Polakov was involved in the transaction. A conference call was eventually scheduled for November 8, 2013 after a series of emails involving Plaintiffs, Mr. Coste and Merz Pharma.

_____

[2] For any emails that are in German or partially in German, Plaintiffs have included an unofficial google translation version solely for the convenience of those readers who do not read German. Plaintiffs do not attest to the accuracy of the translations but find that they are sufficient to provide the reader with an understanding of the emails.

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

21.     A copy of the series of October 30, 2013 emails and the conference call invitation detail is attached hereto as Composite Exhibit "3".

22.     Shortly after the November 8th telephone conference was held, Mr. Coste sent Merz Pharma on behalf of Michel Dyens & Co. and Plaintiffs private and confidential written material regarding Ulthera and the other potential target companies that had been discussed. A copy of the material sent in November is attached hereto as Exhibit "4".

23.     Additionally, it was decided that Mr. Polakov and Mr. Coste would travel to Merz Pharma's headquarters in Frankfurt, Germany to have a face to face meeting with the Merz executives, primarily about Ulthera.

24.     On Friday, December 6, 2013, Mr. Polakov and Mr. Coste met with Mr. Bergler and Jonathan Parrish, a business development manager for Merz NA, at the Merz Pharma's Headquarters in Frankfurt, Germany.    Initially, Merz Pharma's CEO Philip Burchard was scheduled to attend the meetings, but he ultimately did not attend.

25.     The December 6, 2013 meeting was a multi-hour meeting in Merz Pharma's conference room in which Ulthera and some other target companies were discussed in detail, as was the respective roles of Mr. Polakov and Mr. Coste's companies and their compensation.

26.     Specifically, Mr. Bergler and Mr. Parrish were advised once again that Plaintiffs represented Ulthera and worked on the seller's side, and Mr. Coste confirmed that if any of the proposed deals were consummated that Mr. Coste's company would be representing Merz as the buyer.    Plaintiffs and Michel Dyens & Co.'s respective fees were to  be paid out of the Purchaser's funds, with their respective fees to be in the range of 1 to 5% of acquisition price which is standard in the industry.[3]

---

[3] Plaintiffs have officially collaborated on a deal with Michel Dyens & Co. with an approximate acquisition value of the better part of One Hundred Million Dollars ($100,000,000.00), for which Plaintiffs' received a 5% fee and Michel Dyens & Co. received a 3% fee.

6

PATHMAN  LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL  33131

27.     During the discussion regarding the possible acquisition of Ulthera, Mr. Bergler and Mr. Parrish both stated that Merz was not really interested in acquiring Ulthera because Merz did not want to get into the field of "expensive medical devices" and that they wanted to only consider true "pharmaceutical types of products." They also stated that they thought Ulthera was too large for Merz to potentially acquire.

28.     In response, Mr. Polakov gave a very extensive and detailed proprietary presentation about how the acquisition of Ulthera would be advantageous to Merz and would provide Merz great additional value because Ulthera would provide Merz with an "in-office installed base device market" which would allow Merz to build upon, gaining larger and deeper relationships in the domain of medical aesthetic practices.

29.     After hearing Mr. Polakov's detailed explanation, both Mr. Bergler and Mr. Parrish stated that that they would take Mr. Polakov's many points under consideration.

30.     On December 10, 2013, Mr. Coste sent a post-meeting email to Mr. Bergler and Mr. Parrish with a copy to Mr. Polakov recapping the meeting. A copy of the December 10, 2013 email is attached hereto as Exhibit "5".

31.     Thereafter, Mr. Coste on behalf of his company and Plaintiffs continued to communicate with Merz representatives regarding Ulthera and certain of the other targets previously identified in their extensive communications.

32.     On January 27, 2014, Mr. Burchard scheduled a meeting with Mr. Coste to take place on February 1st at the IMCAS Medical Conference in Paris, France, which was confirmed on January 28, 2014. A copy of the January 27th and 28th emails with Mr. Burchard's assistant scheduling the meeting is attached hereto as composite Exhibit "6".

33.     Michel Dyens & Co. on behalf of itself and Plaintiffs again provided private and confidential written material regarding Ulthera as well as other potential target companies to

7

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

Merz in connection with the February 1, 2014 meeting. A copy of the material is attached hereto as Exhibit "7".

34.     During the February 1st meeting, Mr. Burchard advised Mr. Coste that Merz did not have any interest in acquiring Ulthera or other medical equipment opportunities.

35.     Mr. Coste promptly informed Mr. Polakov of Merz's decision, who in turn communicated with Mr. Likens, whose company was also at the IMCAS Conference in Paris, that Plaintiffs were unable to obtain a potential buyer. Mr. Likens stated that Ulthera separately had not located an interested acquirer and that Ulthera intended to move forward with the decision to go public and that he had started the process of doing so.

36.     Approximately 5 months later, Plaintiffs became aware based upon various public announcements in the industry that Merz[4], or one of its affiliates or subsidiaries, had acquired 100% of Ulthera for approximately Six Hundred Million Dollars ($600,000,000.00).

37.     Mr. Polakov immediately contacted Mr. Coste, who was equally shocked and upset to find out that Merz had closed a deal to purchase Ulthera without notifying, informing and, as a result, not paying either Plaintiffs' or Michel Dyens & Co their respective fees.

38.     Mr. Coste's efforts over several months to discuss and resolve this matter with Merz were unsuccessful.

39.     Mr. Polakov subsequently spoke with Mr. Likens, who confirmed that Merz had acquired Ulthera. Mr. Likens stated that he thought Merz was responsible for paying all owed fees to Plaintiffs and Michel Dyens & Co. Mr. Likens further stated that Merz had never advised him, or anyone with Ulthera, of Plaintiffs and Michel Dyens & Co.'s involvement and

---

[4] Various news reports attributed the acquisition to Merz NA and others to Merz Pharma with both entities providing statements indicating that they were the acquiring company. Based upon a Federal Trade Commission statement it appears that an affiliate entity named Merz Holding GmbH & Co. KG that took title to Ulthera, while an SEC filing states that a company known as Merz International, Inc. owns Ulthera, and the Merz website states that Ulthera is a division of Merz Aesthetics, which is a division of Merz Pharma.

interactions with Merz. Mr. Likens emphasized that Ulthera itself had not intentionally excluded Plaintiffs and/or Michel Dyens & Co., and that it was very clearly Merz that excluded Plaintiffs and Michel Dyens & Co., in that Merz had failed to be forthcoming with Ulthera during entire eventual process of the acquisition.

40.     Mr. Likens also confirmed, once again, that at the time he had retained Plaintiffs in September 2013 that Ulthera was not engaged in any substantive negotiations or discussions with Merz or anyone else regarding their acquisition of Ulthera. Furthermore, according to Mr. Likens' recent assurances, Merz did not begin serious negotiations with Ulthera, and vice versa, until after the IMCAS Medical Conference in February 2014 and more importantly after Ulthera's intention to take the company public became public information.

41.     Thereafter, Mr. Polakov attempted to meet with Mr. Bergler at the next industry conference they both attended, but Mr. Bergler rudely ended their conversation once he realized the subject and deliberately walked away.

42.     At a subsequent conference, Mr. Polakov spoke with a more junior member of Merz's Business Development team, who advised that he would try to look into it. Eventually that person reported back to Mr. Polakov that Mr. Bergler had ordered him not to have any further dealings whatsoever with Mr. Polakov.

43.     In January of 2017, Mr. Polakov had the opportunity to finally speak with Mr. Burchard at the JP Morgan related Dermatology Summit in San Francisco, and to explain to him in detail the situation. Mr. Burchard agreed to look into it and claimed that he had been unaware of Plaintiffs' involvement, despite his having been involved in emails and discussions with Plaintiffs and Michel Dyens & Co.

44.     After not hearing back from Mr. Burchard, Mr. Polakov followed up with him in writing on May 9, 2014 reminding Mr. Burchard that he had never heard from him and that Mr.

9

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

Burchard had failed to speak with Mr. Polakov on the issue at two intervening conferences where Mr. Polakov had seen him. A copy of the May 9, 2014 email is attached hereto as Exhibit "8".

45. Mr. Burchard responded on May 11, 2014 claiming as an excuse that he had been waiting on additional information and that Mr. Polakov should speak with Merz Pharma's in-house counsel Frau Frankenberger.

46. Mr. Polakov spoke with Frau Frankenberger and offered to meet with her to discuss the matter. Frau Frankenberger refused to even consider a meeting unless Mr. Polakov first provided all prior communications and documents he had regarding the Ulthera dealings with Merz. Frau Frankenberger made this demand while also refusing to provide any of Merz's documentation.

47. Due to Frau Frankenberger's one-sided pre-condition for her to even consider a meeting, no meeting took place.

48. In June 2017, Mr. Polakov then reached out to the Board of Merz Pharma, who initially expressed a possible interest in meeting, but subsequently on June 22, 2017 declined to meet.

49. Instead of meeting, the Merz Pharma Board had Frau Frankenberger send an email dated June 22, 2017 in which Merz claimed for the first time, and contrary to prior statements of Merz personnel and the assurances of Mr. Likens, that it had commenced its formal negotiations to acquire Ulthera in October 2013, and further claimed that Merz had adopted a Mutual Nondisclosure Agreement with Ulthera prior to Plaintiffs and Michel Dyens & Co.'s November 8th conference call and the December 6th meeting with Merz Pharma and Merz NA. A copy of Frau Frankenberger's June 22, 2017 email is attached hereto as Exhibit "9".

50. Frau Frankenberger's June 22nd did not provide a copy of the alleged non-disclosure agreement and her email totally failed to address the fact that Plaintiffs and Michel

Case 7:18-cv-00117-FL   Document 1   Filed 06/26/17   Page 10 of 27
PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

Dyens & Co had provided Merz with detailed information on Ulthera in September 2013; the month prior to Merz's claimed commencement of formal negotiations with Ulthera.

51.     Frau Frankenberger's June 22nd email also failed to address why Merz was just now claiming, for the first time, that Merz had entered into negotiations prior to its meetings with Plaintiffs and Michel Dyens & Co., or why it would meet with, solicit and continue to accept detailed information and presentations from Plaintiffs and Michel Dyens & Co. regarding Ulthera if Merz was supposedly already in negotiations with Ulthera.

52.     Plaintiffs have retained undersigned counsel to represent them in this action, and are required to pay said firm reasonable attorneys' fees.

53.     All conditions precedent to the bringing of this action were performed, have occurred or were waived.

## COUNT I
## BREACH OF ORAL CONTRACT

54.     Plaintiffs re-allege Paragraphs 1 through 52 as if fully set forth herein.

55.     Starting in September 2013, Plaintiffs and Michel Dyens & Co. offered their respective services to Merz to identify, evaluate, vet and provide detailed information and direct access regarding potential target companies along with making Plaintiffs knowledge of and relationships with Ulthera and other target companies available to Merz.

56.     Plaintiffs reached an oral contract with Merz Pharma and Merz NA in which it was agreed that Plaintiffs, along with Michel Dyens & Co. would identify, evaluate, vet and provide detailed information to Merz Pharma and Merz NA regarding potential target companies along with Plaintiffs' knowledge of and relationships with Ulthera and the other potential target companies so that Merz Pharma or Merz NA could acquire the target companies, either directly or through one of their affiliate entities.

11

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

57.     Pursuant to that oral contract, if Merz Pharma or Merz NA was interested in acquiring any company that Plaintiffs and Michel Dyens & Co. proffered, Plaintiffs and Michel Dyens & Co. would be involved in providing requested services in connection with the acquisition for which Plaintiffs were to be paid a fee, which would in the range of 1 to 5% of the acquisition price which was standard in the industry, and to be paid from Merz Pharma or Merz NA's acquisition funds.[5]

58.     This oral contract was formed based upon the communications (written and oral) between and among Michel Dyens & Co., Plaintiffs and Merz Pharma and Merz NA between September 2013 and December 2013, as alleged above in more detail in the general allegations.

59.     Merz Pharma and Merz NA accepted Plaintiffs' offer of services by Merz Pharma and Merz NA's words and actions in meeting and conferring with Plaintiffs and accepting and soliciting confidential written information provided by and on behalf of Plaintiffs to Merz Pharma and Merz NA as well as the proprietary oral presentation provided by Plaintiffs' President Mr. Polakov.

60.     Plaintiffs provided consideration in the form of their time in putting together confidential information and proprietary presentations regarding Ulthera and other target companies, their time in meeting and conferencing with Merz Pharma and Merz NA, as well as the time and expense incurred in traveling to Frankfurt, Germany for the meeting at Merz Pharma's headquarters, all of which benefited and were accepted by Merz Pharma and Merz NA.

61.     Merz Pharma and Merz NA breached the oral contract by acquiring Ulthera, in or about July 2014, either directly or through an affiliated company, without involving Plaintiffs in the transaction, without disclosing Plaintiffs' role to Ulthera, and without compensating Plaintiffs the inherently agreed upon fee.

---

[5] Michel Dyens & Co. had an independent and inherently separate contract with Merz Pharma and Merz NA, that upon information and belief is also oral.

12

62.     Plaintiffs have demanded payment, but Merz Pharma and Merz NA have failed and refused to pay the amounts due and owing to Plaintiffs.

63.     As a result of Merz Pharma and Merz NA's breaches, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against Defendants Merz Pharma and Merz NA, jointly and severally, for actual damages, pre-judgment interest, costs and any such other and further relief which the Court may deem just and proper.

## COUNT II
## BREACH OF ORAL CONTRACT

64.     Plaintiffs re-allege Paragraphs 1 through 52 as if fully set forth herein.

65.     During the 5-Continents Aesthetic Medicine Conference held on September 18-21, 2013 in France , Michael Polakov, the President of Medi-Build and HBT, met with Matthew Likens, the President and CEO of Ulthera, Inc., regarding Ulthera's interest in being acquired by a pharmaceutical company in order for Ulthera to continue its growth and inherent profitability.

66.     During the course of the conference, Mr. Likens and Mr. Polakov had several discussions regarding Ulthera, and Mr. Likens advised Mr. Polakov that although Ulthera had made it known to several companies that it was interested in being acquired, as of that time Ulthera was not engaged in any substantive discussions or active negotiations with any pharmaceutical companies or any acquisition entities.

67.     Accordingly, Mr. Likens and Mr. Polakov entered into an oral contract at the conference whereby Plaintiffs had a non-exclusive engagement to market Ulthera to potential acquiring entities, including pharmaceutical companies.

68.     In order to avoid limiting Plaintiffs' efforts, Mr. Likens specifically and purposefully did not list or exclude any potential acquiring entities from those upon whom

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

Plaintiffs would be entitled to a fee if they acquired Ulthera, based upon Mr. Likens' position that at that time Ulthera was not in any substantive discussions with any entities about being acquired. Mr. Likens specifically did not want to limit Plaintiffs from bringing any interested entity, even those that may have previously had preliminary talks with Ulthera, to the "table", once and for all.

69. Ulthera agreed that Plaintiffs would be entitled to a fee commensurate to the standard industry fee which ranges from 1 to 5 % of acquisition price, if Plaintiffs successfully found an acquiring company. Based upon Mr. Likens' desire, it was agreed that payment of the fee would be structured as part of the acquisition deal and be funded by the purchasing entity regardless of whether the payment was routed through Ulthera or not. For that reason, Mr. Likens asked Plaintiffs to please register the name of any specific party(ies) when and if they expressed a definite interest in negotiating an acquisition.

70. Plaintiffs provided consideration in the form of their time in putting together confidential information and proprietary presentations regarding Ulthera, their time in meeting and conferencing with Merz Pharma and Merz NA, as well as the time and expense incurred in traveling to Frankfurt, Germany for the meeting at Merz Pharma's headquarters, all of which benefited and were accepted by Ulthera.

71. Plaintiffs, through their actions and the actions of Michel Dyens & Co., identified Ulthera to Merz Pharma and Merz NA and provided confidential information and proprietary presentations on the value of Ulthera to Merz Pharma and Merz NA during their November 8, 2013 conference call and December 6, 2013 meeting as well as in the written material provided to Merz Pharma and Merz NA in connection with the November conference call and the meeting provided to Mr. Burchard in connection with the February 1st meeting with Mr. Coste.

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL  33131

72.     Accordingly, as a direct result of Plaintiffs' actions and those taken on Plaintiffs

behalf by Michel Dyens & Co., Ulthera was acquired in July 2014 by Merz Pharma or Merz

NA, directly or through one of their affiliates,.

73.     During the December 6, 2013 meeting that Plaintiffs and Michel Dyens & Co.

had with Merz Pharma and Merz NA, Plaintiffs made known to Merz Pharma and Merz NA that

it had an oral contract with Ulthera under the terms as alleged above, and Merz Pharma and Merz

NA assumed that oral contract and the payment obligations thereunder by its actions, statements

and conduct including its proceeding to acquire, either directly or through an affiliate, Ulthera.

74.     Pursuant to their oral contract with Ulthera, Plaintiffs are entitled to a fee in the

standard industry range of 1 to 5 % of the Six Hundred Million Dollar ($600,000,000.00)

acquisition price of Ulthera, which was to be funded and paid by Merz Pharma or Merz NA and

which remains due and owing, and therefore Plaintiff has been damaged by this breach.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a judgment

in their favor and against Defendants Merz Pharma and Merz NA, , jointly and severally, for

actual damages, pre-judgment interest, costs and any such other and further relief which the

Court may deem just and proper.

## COUNT III
## UNJUST ENRICHMENT

75.     Plaintiffs re-allege Paragraphs 1 through 52 as if fully set forth herein.

76.     Plaintiffs conferred a benefit to Merz Pharma and Merz NA by identifying,

evaluating, vetting and providing detailed information to them regarding Ulthera and other target

companies, as well as providing them with a detailed and extensive proprietary oral presentation

regarding the benefits of Ulthera and its industry segment to Merz Pharma and Merz NA, and the

growth opportunities provide to them by such an acquisition.

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

77.     Merz Pharma and Merz NA accepted and retained the benefit by accepting the confidential information and the proprietary oral presentation and proceeded to act upon that benefit by acquiring either directly or through an affiliate Ulthera.

78.     The circumstances are such that it would be inequitable for Merz Pharma and Merz NA, whether in their individual capacities or as acquirers of Ulthera, to accept the benefit without compensating Plaintiffs for the fair value of their services.

79.     The standard industry compensation range for the services that Plaintiffs provided is 1 to 5 % of Ulthera's acquisition price of Six Hundred Million Dollars ($600,000,000.00). .

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment in their favor against Merz Pharma and Merz NA for actual damages, pre-judgment interest, costs and award any such other and further relief which the Court deems just and proper.

## COUNT IV
## QUANTUM MERUIT

80.     Plaintiffs re-allege Paragraphs 1 through 52 as if fully set forth herein.

81.     Plaintiffs conferred a benefit to Merz Pharma and Merz NA by identifying, evaluating, vetting and providing detailed information to them regarding Ulthera and other target companies, as well as providing them with a detailed and extensive proprietary oral presentation regarding the benefits of Ulthera and its industry segment to Merz Pharma and Merz NA, and the growth opportunities provide to them by such an acquisition.

82.     Merz Pharma and Merz NA accepted and retained the benefit by accepting the services that Plaintiffs provided, including the detailed confidential information and the proprietary oral presentation and proceeded to act upon that benefit by acquiring either directly or through an affiliate Ulthera.

83.     The circumstances are such that it would be inequitable for Merz Pharma and Merz NA to accept the benefit without compensating Plaintiffs for the fair value of their services.

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

84. The standard industry compensation range for the services that Plaintiffs provided is 1 to 5 % of Ulthera's acquisition price of Six Hundred Million Dollars ($600,000,000.00).

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment in their favor against Merz Pharma and Merz NA for actual damages, pre-judgment interest, costs, and award any such other and further relief which the Court deems just and proper

## COUNT V
## INTENTIONAL MISREPRESENTATION

85. Plaintiffs re-allege Paragraphs 1 through 52 as if fully set forth herein.

86. Plaintiffs, through Mr. Polakov and Mr. Coste, communicated with Merz Pharma and Merz NA on September 26, 2013 and again in October and November 2013 to inquire if they were interested in working with and having Plaintiffs identify, evaluate, vet and provide detailed information, relationships and industry insight regarding potential companies for acquisition.

87. Merz Pharma and Merz NA accepted Plaintiffs' offer of services and Plaintiffs began working with Merz Pharma and Merz NA.

88. As a result of Merz Pharma and Merz NA's acceptance of Plaintiffs' offer, Plaintiffs' President Mr. Polakov spoke and then met with Merz Pharma and Merz NA and discussed the potential acquisition of Ulthera in November and December 2013, respectively.

89. Merz Pharma, through the statements of Mr. Bergler, and Merz NA, through the statements of Mr. Parrish, advised Plaintiffs on December 6, 2013 that neither company had any interest in acquiring Ulthera, but advised that based upon Plaintiffs' proprietary presentation at the December 6th meeting that they take would take Plaintiffs' points under consideration.

90. Mr. Burchard, CEO of Merz Pharma, subsequently confirmed on February 1, 2014 in his communication with Mr. Coste that neither Merz Pharma nor Merz NA had any interest in acquiring Ulthera.

17

91.     Mr. Bergler's, Mr. Parrish's and Mr. Burchard's statements that Merz Pharma and Merz NA did not have any interest in acquiring Ulthera were knowingly false as Merz Pharma and Merz NA either directly or through an affiliate, acquired Ulthera in or about July 2014, and further because Merz Pharma's in-house counsel has now written a June 22, 2017 email in which she contends Merz had entered into substantive negotiations to acquire Ulthera in October 2013 as reflected in a claimed non-disclosure agreement.

92.     Merz Pharma and Merz NA's knowingly false statements that they did not have any interest in acquiring Ulthera were made in order to avoid having to pay Plaintiffs their fee, as well as to induce Plaintiffs to not have reason to register Merz Pharma and Merz NA as potential acquiring entities with Ulthera, and to induce Plaintiffs to have no further interactions with Merz Pharma and Merz NA with respect to the Ulthera acquisition.

93.     Plaintiffs justifiably acted in reliance upon Merz Pharma and Merz NA's express statements and therefore advised Ulthera's President and CEO, Matt Likens, that they had not located any company to acquire it and as a result Plaintiffs did not register Merz Pharma or Merz NA with Ulthera, and further ceased their interactions with Merz Pharma and Merz NA regarding acquiring Ulthera.

94.     Plaintiffs were damaged by Merz Pharma and Merz NA's intentional misrepresentations as Plaintiffs did not register the names of Merz Pharma and Merz NA with Ulthera and therefore were excluded by Ulthera and Merz Pharma and Merz NA in the acquisition of Ulthera and did not receive their fee which was to be in the industry standard range of 1 to 5% of Ulthera's acquisition price of Six Hundred Million Dollars ($600,000,000.00).

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment in their favor against Merz Pharma and Merz NA, jointly and severally, for actual damages, pre-

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

judgment interest, costs and award any such other and further relief which the Court deems just and proper

## COUNT VI
## INTENTIONAL MISREPRESENTATION

95. Plaintiffs re-allege Paragraphs 1 through 52 as if fully set forth herein.

96. Plaintiffs, through Mr. Polakov and Mr. Coste, communicated with Merz Pharma and Merz NA on September 26, 2013 and again in October and November 2013 to inquire if they were interested in working with and having Plaintiffs identify, evaluate, vet and provide detailed information, relationships and industry insight regarding potential companies for acquisition.

97. Merz Pharma and Merz NA accepted Plaintiffs' offer of services and Plaintiffs began working with Merz Pharma and Merz NA.

98. As a result of Merz Pharma and Merz NA's acceptance of Plaintiffs' offer, Plaintiffs' President Mr. Polakov met with Merz Pharma and Merz NA and discussed the potential acquisition of Ulthera in November and December 2013.

99. Merz Pharma, through the silence and actions of Mr. Bergler during his communications and interactions with Plaintiffs and Michel Dyens & Co. in their communications as set forth above in October, November and December failed to disclose to Plaintiffs that Merz Pharma or its affiliates had already or were about to engage in negotiations with Ulthera and further omitted to disclose that they were not going to pay any fee to Plaintiffs.

100. Merz NA through the silence through the silence and actions of Mr. Parrish during the December 6, 2013 meeting with Plaintiffs and Michel Dyens & Co. failed to disclose to Plaintiffs that Merz NA or its affiliates had already or were about to engage in negotiations with Ulthera and thus further omitted to disclose that they were operating in such a matter that would result in nonpayment of any fee to Plaintiffs.

19

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

101.    Mr. Burchard, CEO of Merz Pharma, through his silence and actions during his meeting with Mr. Coste[6] on February 1, 2014  failed to disclose on behalf of Merz Pharma and Merz NA that Merz Pharma and Merz NA had supposedly already engaged in or were about to engage in direct negotiations with Ulthera to acquire it.

102.    Mr. Bergler's, Mr. Burchard's and Mr. Parrish's  omissions were intentional and knowingly false and constitute an intentional misstatement as Merz Pharma and Merz NA either directly or through an affiliate, were already engaged in or about to engage in direct negotiations to acquire Ulthera.

103.    Merz Pharma and Merz NA's omissions were done in order to avoid having to pay Plaintiffs their fee, as well as to induce Plaintiffs to provide them with confidential information and proprietary presentations, to induce them not to register Merz Pharma and Merz NA as potential acquiring companies with Ulthera, and to induce Plaintiffs to have no further interactions with Merz Pharma and Merz NA with respect to the Ulthera acquisition.

104.    Plaintiffs justifiably acted in reliance upon Merz Pharma and Merz NA's statements and as a result of their omissions met with and provided confidential information and proprietary presentations and did not register Merz Pharma or Merz NA with Ulthera, and further ceased its interactions with Merz Pharma and Merz NA regarding acquiring Ulthera.

105.    Plaintiffs were damaged by Merz Pharma and Merz NA's intentional omissions as Plaintiffs provided proprietary presentations and confidential information for which they were not compensated and they did not register Merz Pharma and Merz NA with Ulthera and therefore were excluded by Ulthera and Merz Pharma and Merz NA in the acquisition of Ulthera and did not receive their fee which was to be in the industry standard range of 1 to 5% of Ulthera's acquisition price of Six Hundred Million Dollars ($600,000,000.00).

---

[6] Mr. Coste was meeting on behalf of Plaintiffs as well as Michel Dyens & Co.

PATHMAN  LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL  33131

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment in their favor against Merz Pharma and Merz NA, jointly and severally, for actual damages, pre-judgment interest, costs, and award any such other and further relief which the Court deems just and proper

## COUNT VII
## NEGLIGENT MISREPRESENTATION

106.    Plaintiffs re-allege Paragraphs 1 through 52 as if fully set forth herein.

107.    Plaintiffs, through Mr. Polakov and Mr. Coste, communicated with Merz Pharma and Merz NA on September 26, 2013 and again in October and November 2013 to inquire if they were interested in working with and having Plaintiffs identify, evaluate, vet and provide detailed information, relationships and industry insight regarding potential companies for acquisition.

108.    Merz Pharma and Merz NA met with Plaintiffs' President Mr. Polakov and discussed the potential acquisition of Ulthera in November and December 2013.

109.    Merz Pharma through the statements of Mr. Bergler, and Merz NA through the statements of Mr. Parrish, advised Plaintiffs on December 6, 2013 that neither company had any interest in acquiring Ulthera.

110.    Mr. Burchard, CEO of Merz Pharma, subsequently confirmed on February 1, 2014 in his communication with Mr. Coste[7] that neither Merz Pharma nor Merz NA had any interest in acquiring Ulthera.

111.    Merz Pharma and Merz NA statements to Plaintiffs that they did not have any interest in acquiring Ulthera were false as Merz Pharma and Merz NA either directly or through an affiliate, acquired Ulthera in or about July 2014, and further because Merz Pharma's in-house counsel has now written a June 22, 2017 email in which she contends Merz had entered into

---

[7] Mr. Coste was meeting on behalf of Michel Dyens & Co. and Plaintiffs.

formal negotiations to acquire Ulthera in October 2013 as supposedly reflected in a claimed non-disclosure agreement.

112. Mr. Bergler, as an executive and representative of Merz Pharma, had a duty, which he breached, to ascertain the truth of his statements regarding Merz Pharma's interest (or supposed non-interest) in acquiring Ulthera, and a further duty, which he also breached, to correct the false statements as that was a material fact and element of Merz Pharma's dealings with Plaintiffs.

113. Mr. Parrish as an executive and representative of Merz NA, had a duty, which he breached, to ascertain the truth of his and his superior, Mr. Bergler's, statements regarding Merz NA's interest (or supposed non-interest) in acquiring Ulthera and a further duty, which he also breached, to correct the false statements as it was a material fact and element of Merz's dealings with Plaintiffs.

114. Mr. Burchard as the CEO of Merz Pharma and a representative of Merz Pharma and Merz NA, had a duty, which he breached, to ascertain the truth of his and his employees' statements regarding Merz Pharma's and Merz NA's interest (or supposed non-interest) in acquiring Ulthera, and a further duty, which he also breached, to correct the false statements as it was a material fact and element of Merz Pharma and Merz NA's dealings with Plaintiffs.

115. The statements that Mr. Bergler, Mr. Parrish and Mr. Burchard made on behalf of Merz Pharma and Merz NA that those companies did not have any interest in acquiring Ulthera were made in order to avoid having to pay Plaintiffs their fee as well as to induce Plaintiffs not to register Merz Pharma and Merz NA as potential acquiring companies with Ulthera and to induce Plaintiffs to have no further interactions with Merz Pharma and Merz NA with respect to the Ulthera acquisition.

PATHMAN  LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL  33131

1 16.    Plaintiffs justifiably acted in reliance upon Merz Pharma and Merz NA's express statements and therefore advised Ulthera's President and CEO, Matt Likens, that they had not located any company to acquire it and as a result did not register Merz Pharma or Merz NA with Ulthera, and further ceased their interactions with Merz Pharma and Merz NA regarding acquiring Ulthera.

1 17.    Plaintiffs were damaged by Merz Pharma and Merz NA's negligent misrepresentations as they did not register Merz Pharma and Merz NA with Ulthera and therefore were excluded by Ulthera and Merz Pharma and Merz NA in the acquisition of Ulthera, and did not receive their fee which was to be in the industry standard range of 1 to 5% of Ulthera's acquisition price of Six Hundred Million Dollars ($600,000,000.00)..

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment in their favor against Merz Pharma and Merz NA for actual damages, pre-judgment interest, costs, and award any such other and further relief which the Court deems just and proper.

## COUNT VIII
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

1 18.    Plaintiffs re-allege Paragraphs 1 through 52 as if fully set forth herein.

1 19.    Merz Pharma and Merz NA entered into an oral contract with Plaintiffs in which Merz Pharma and Merz NA agreed that Plaintiffs would identify, evaluate, vet and provide detailed information regarding Ulthera along with making Plaintiffs' knowledge of and relationships with Ulthera available to Merz Pharma and Merz NA in connection with their acquisition efforts.

120.    As part of the good faith and fair dealing that was required between the parties, Merz Pharma and Merz NA had a duty and obligation to enter into a contract with Plaintiffs that could be performed if Merz Pharma, Merz NA or one of their affiliates acquired Ulthera.

23

Case 7:18-cv-00117-FL   Document 1   Filed 06/26/17   Page 23 of 27
PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

121.    Specifically, Merz Pharma and Merz NA had a duty to treat fairly the business opportunity being presented by Plaintiffs, including the obligation to not misuse any confidential or proprietary information or analysis for their personal gain without compensating Plaintiffs.

122.    Merz Pharma and Merz NA breached their duty of good faith and fair dealing because, as has now been made clear by the Frau Frankenberger June 22, 2017 email, Merz Pharma and Merz NA had no intention of honoring the contract and fairly treating the business opportunity and proprietary or confidential information and analysis Plaintiffs provided to them.

123.    Instead, Merz Pharma and Merz NA engaged in duplicitous conduct whereby they repeatedly met with and obtained confidential and proprietary information from and on behalf of Plaintiffs under false pretenses of working collaboratively with Plaintiffs pursuant to an agreement to pay Plaintiffs.

124.    Merz Pharma and Merz NA agreed to pay a fee which was to be in the industry standard range of 1 to 5% of Ulthera's acquisition if Merz Pharma, Merz NA, or any affiliated entity acquired Ulthera.

125.    Plaintiffs provided consideration in the form of their time in putting together confidential information regarding Ulthera and other target companies, their time in meeting and conferencing with Merz Pharma and Merz NA, as well as the time and expense incurred in traveling to Frankfurt, Germany for the meeting at Merz Pharma's headquarters, all of which benefited and were accepted by Merz Pharma and Merz NA.

126.    Plaintiffs have demanded payment, but Merz Pharma and Merz NA have failed and refused to pay the amounts due and owing to Plaintiffs.

127.    As a result of Merz Pharma and Merz NA's breaches Plaintiffs have been damaged.

PATHMAN  LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL  33131

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against Defendants Merz Pharma and Merz NA, jointly and severally, for actual damages, pre-judgment interest, costs, and any such other and further relief which the Court may deem just and proper..

## COUNT IX
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

128.    Plaintiffs re-allege Paragraphs 1 through 52 as if fully set forth herein.

129.    During the 5-Continents Aesthetic Medicine Conference  held on September 18-21, 2013 in France , Michael Polakov, the President of Medi-Build and HBT, met with Matthew Likens, the President and CEO of Ulthera, Inc., regarding Ulthera's interest in being acquired by a pharmaceutical company in order for Ulthera to continue its growth and inherent profitability.

130.    During the course of the conference, Mr. Likens and Mr. Polakov had several discussions regarding Ulthera, and Mr. Likens advised Mr. Polakov that although Ulthera had made it known to several companies that it was interested in being acquired, as of that time Ulthera was not engaged in any substantive discussions or active negotiations with any pharmaceutical companies or any acquisition entities.

131.    Accordingly, Mr. Likens and Mr. Polakov entered into an oral contract at the conference whereby Plaintiffs  had a non-exclusive engagement to market Ulthera to potential acquiring entities, including pharmaceutical companies.

132.    In order to avoid limiting Plaintiffs' efforts, Mr. Likens specifically and purposefully did not list or exclude any potential acquiring entities from those upon whom Plaintiffs would be entitled to a fee if they acquired Ulthera, based upon Mr. Likens' position that at that time Ulthera was not in any substantive discussions with any entities about being acquired.   Mr. Likens specifically did not want to limit Plaintiffs from bringing any interested

PATHMAN  LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL  33131

entity, even those that may have previously had preliminary talks with Ulthera, to the "table", once and for all.

133.     Ulthera agreed that Plaintiffs would be entitled to a fee commensurate to the standard industry fee which ranges from 1 to 5 % of acquisition price if Plaintiffs successfully found an acquiring company.  Based upon Mr. Likens' desire, it was agreed that payment of the fee would be structured as part of the acquisition deal and  be funded by the purchasing entity regardless of whether the payment was routed through Ulthera or not.   For that reason, Mr. Likens asked Plaintiffs to please register the name of any specific party(ies) when and if they expressed a definite interest in negotiating an acquisition.

134.     Mr. Likens and Mr. Polakov shook hands to confirm the agreement.

135.     Plaintiffs, through their actions and the actions of Michel Dyens & Co., identified Ulthera to Merz Pharma and Merz NA and provided confidential information and proprietary presentations on the value of Ulthera to Merz Pharma and Merz NA during their November 8, 2013 conference call and December 6, 2013 meeting as well as in the written material provided to Merz Pharma and Merz NA in connection with the November conference call and the meeting provided to Mr. Burchard in connection with the February 1st meeting with Mr. Coste.

136.     During the December 6, 2013 meeting that Plaintiffs and Michel Dyens & Co. had with Merz Pharma and Merz NA, Plaintiffs made known to Merz Pharma and Merz NA that it had an oral contract with Ulthera under the terms as alleged above.

137.     Therefore Merz Pharma and Merz NA, at all relevant times, had knowledge of the contractual relationship between Plaintiffs and Ulthera.

138.     Merz Pharma and Merz NA intentionally, and without justification, interfered with Plaintiffs' contractual relationship with Ulthera.

PATHMAN LEWIS, LLP • ONE BISCAYNE TOWER, SUITE 2400 • 2 SOUTH BISCAYNE BOULEVARD • MIAMI, FL 33131

139. Specifically, Merz Pharma and Merz NA, directly or through an affiliate proceeded to acquire Ulthera, Inc. without disclosing or informing Ulthera that Plaintiffs had provided Merz Pharma and Merz NA with confidential and proprietary information and without informing Plaintiffs, thereby precluding Ulthera from listing Plaintiffs as part of the transaction resulting in Plaintiffs not receiving the agreed upon compensation.

140. As a result of this interference, which breached and tortuously interfered with Plaintiffs' contractual relationship with Ulthera, Plaintiffs were damaged as they were not paid the required fee for their services, which was to have been a fee in the standard industry range of 1 to 5 % of the Six Hundred Million Dollar ( $600,000,000.00) acquisition price of Ulthera, which was to be funded and paid by Merz Pharma or Merz NA and which remains due and owing.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against Defendants Merz Pharma and Merz NA, jointly and severally, for actual damages, pre-judgment interest, costs, and any such other and further relief which the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

141. Plaintiffs demand trial by jury on all issues so triable.

PATHMAN LEWIS, LLP
Counsel for Plaintiff
One Biscayne Tower, Suite 2400
Two S. Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 379-2425
Facsimile: (305) 379-2420

By:_____
JOHN A. MOORE
Fla. Bar No. 91820
AARON TANDY
Fla. Bar No. 190144

27