IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:18-CV-117-FL

HEALTH & BEAUTY )
TECHNOLOGIES, INC., and MEDI- )
BUILD INTERNATIONAL, CORP., )
)
Plaintiffs, )
)
v. ) O R D E R
)
MERZ PHARMA GMBH KGAA, and )
MERZ NORTH AMERICA, INC., )
)
Defendants. )

Plaintiffs Health and Beauty Technologies, Inc. and Medi-Build International Corp. ("Plaintiffs") move the court to compel Defendants Merz Pharma GmbH & Co. KGaA ("Merz Pharma") and Merz North America, Inc. ("Merz NA") to fully and completely respond to Plaintiffs' Second Request for Production of Documents. [DE-170]. Defendants oppose the motion. [DE-172]. With leave of court, Plaintiffs filed a reply and Defendants filed a surreply. [DE-176, -181]. The issues have been fully briefed, and the motion is ripe for decision. For the reasons stated below, Plaintiffs' motion is allowed in part and denied in part.

**I. BACKGROUND**

Plaintiffs have asserted claims of breach of contract and associated torts against Defendants related to one or both of Defendants' acquisition of non-party Ulthera, Inc. *See* 1st Am. Compl. [DE-142]. Specifically, Plaintiffs allege that they entered into an oral contract with Defendants to evaluate and provide detailed information about potential target companies for Defendants to acquire. *Id.* ¶ 99. Plaintiffs claim that the parties agreed if Defendants acquired one of those target

companies, Defendants would pay Plaintiffs the industry standard one to five percent of the purchase price. *Id.* ¶ 101. Plaintiffs provided information to Defendants about Ulthera, and Plaintiffs allege that Defendants breached their contract by acquiring Ulthera without Plaintiffs' involvement or knowledge and by failing to pay Plaintiffs. *Id.* ¶ 101.

Plaintiffs are Florida corporations, Merz Pharma is a German corporation, and Merz NA is a North Carolina corporation with its principal place of business in North Carolina. Both Defendants moved to dismiss Plaintiffs' first amended complaint. [DE-145, -149]. Merz Pharma argues that this court lacks personal jurisdiction to adjudicate claims against it. [DE-145]. Plaintiffs moved for expedited limited jurisdictional discovery to obtain facts regarding the collaboration between Defendants in acquiring Ulthera. [DE-151]. On August 8, 2018, the court granted Plaintiffs' motion for expedited limited jurisdictional discovery. [DE-162]. Specifically, the order allowed Plaintiffs to seek information regarding Jonathan Parrish, an employee of both Defendants who was involved in the acquisition of Ulthera, and communications between Defendants showing a combined effort to acquire Ulthera. *Id.*

In July 2018, Plaintiffs served Defendants with their Second Request for Production of Documents ("Second RFP"), [DE-151-3], to which Defendants objected, and which are the subject of the parties' dispute:

1.  An organizational chart of Merz, showing the affiliation between Merz NA and Merz Pharma and the existing affiliation and relationship, if any, between these entities and any other Merz affiliated entities and, if different, the affiliation or relationship as it existed in 2013 and 2014.

2.  An organizational chart of Merz NA and its divisions in 2013, 2014 and 2018. An organizational chart showing the affiliation, if any, between Merz NA and Merz Pharma.

3.  Documents sufficient to show or setting forth any direct or indirect ownership of Merz NA by Merz Pharma, including, without limitation, any direct or indirect stock ownership.

4.	All Documents and Communications concerning any agreement between Merz NA and Merz Pharma to share the services of, or to co-employ, Jonathan Parrish between August 2013 and August 2014, inclusive.

5.	All Documents and Communications concerning the acquisition or potential acquisition of Ulthera exchanged between Merz Pharma and Merz NA between August 2013 and August 2014, inclusive.

7.	All Documents and Communications concerning the acquisition or potential acquisition of Ulthera exchanged between Merz Pharma and Merz between August 2013 and August 2014, inclusive.

8.	All Documents and Communications concerning the acquisition or potential acquisition of Ulthera exchanged between Merz NA and Merz between August 2013 and August 2014, inclusive.

9.	All Documents and Communications concerning the acquisition or potential acquisition of Ulthera exchanged between either Merz Pharma or Merz NA and Ulthera between August 2013 and August 2014, inclusive.

11.	All Documents and Communications concerning any meeting or communication with Coste or Polakov relating to the acquisition or potential acquisition of any of the companies discussed at the December 6th meeting with Coste and Polakov, including but not limited to Ulthera.

12.	All Documents and Communications concerning any information relating to Ulthera that was provided by Coste or Polakov to Merz Pharma and Merz NA the December 6th meeting with Coste and Polakov.

13.	All Documents and Communications concerning the acquisition or potential acquisition of Ulthera exchanged between either Merz Pharma or Merz NA and Ulthera and/or Matt Likens or any executive of Ulthera during the period of August 2013 through August 2014, inclusive.

14.	All Documents and Communications concerning the acquisition or potential acquisition of Ulthera prepared by or for Philip Burchard or Hans-Jorge Bergler between August 2013 and August 2014, inclusive.

15.	All Documents and Communications concerning the acquisition or potential acquisition of Ulthera prepared by or for Jonathan Parrish between August 2013 and August 2014, inclusive.

17.	All Documents and Communications concerning the December 10, 2013 email sent by Coste attached to the Complaint as Exhibit 5, including but

not limited to any internal Merz NA or Merz Pharma memoranda regarding the contents of the email and any response thereto.

18.     All Documents and Communications regarding any email system used by Jonathan Parrish to communicate with Merz NA and/or Merz Pharma personnel between August 2013 and August 2014, including but not limited to any duplication or shared email between jonathan.parrish@merz.de and jparrish@merzusa.com.

[DE-151-3].[1] On September 24, 2018, Defendants responded to the Second RFP, objecting to the above-listed items on the grounds of overbreadth, privilege, vagueness, ambiguity, relevancy, burden, and disproportionality. [DE-170-1].

The parties conferred in person and by email regarding the Second RFP. [DE-170] at 3. Defendants contend that because the court's August 8, 2018 order allowed for limited jurisdictional discovery, only Merz Pharma's activities in North Carolina regarding the alleged contract between Defendants and Plaintiffs are relevant, and the contract with non-party Ulthera is irrelevant to jurisdiction. [DE-172] at 8. Plaintiffs argue that Defendants' dealings with Ulthera are relevant to specific jurisdiction because the Ulthera acquisition is the "cornerstone" of Defendants' alleged breach of their contract with Plaintiffs. [DE-176] at 1–2.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the general rule regarding the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, the court has "wide latitude in controlling discovery" and may determine "the course and scope of discovery." *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018) (quoting *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003); *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986)). In particular, "where

---

[1] Requests six, ten, and sixteen are not included in Plaintiffs' motion to compel. [DE-170] at 4.

issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978).

Thus, when a court orders expedited limited jurisdictional discovery, the parties are limited to obtaining discovery relevant to jurisdiction. "Relevancy" is a broadly construed term. *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc.*, 437 U.S. at 351).

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). However, the Federal Rules also provide that

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and

5

conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240 (citation omitted). Accordingly, it is Defendants' burden to show why discovery should be denied.

Defendants offer four reasons why Plaintiffs' motion should be denied: (1) the requests for Defendants' communications regarding Ulthera are irrelevant to specific jurisdiction because Plaintiffs' claim is for breach of Defendants' contract with Plaintiffs, not Ulthera; (2) Plaintiffs' requests refer to ambiguous and unspecified "Merz" entities; (3) Plaintiffs' request regarding Jonathan Parrish's email system is ambiguous and overbroad; and (4) Plaintiffs' requests regarding communications with Coste and Polakov are overbroad. [DE-172] at 4–10. The court will address these arguments in turn.

## A. The relevance of the Ulthera acquisition to specific jurisdiction

Defendants objected to requests five, seven, eight, nine, thirteen, fourteen, fifteen, and seventeen on the grounds of relevance. Defendants argue that only Merz Pharma's purposeful contacts in North Carolina regarding Plaintiffs, and not Ulthera, are relevant to jurisdiction. [DE-172] at 4. Defendants state that "Plaintiffs' claims do not arise from any activities that Merz Pharma had in North Carolina concerning the acquisition of Ulthera." *Id.*

Plaintiffs have alleged that Defendants breached their contract by acquiring Ulthera without Plaintiffs' involvement and without compensating Plaintiffs. 1st Am. Compl. [DE-142] ¶ 106. Plaintiffs seek to show that Merz Pharma worked with Merz NA in North Carolina to acquire Ulthera in breach of its contract with Plaintiffs. *See id.* Merz Pharma's communications with Merz NA regarding Ulthera, as well as Defendants' communications with Ulthera itself, could establish Merz Pharma's contacts in North Carolina concerning the breach of the parties' contract. Thus, Defendants' communications about and with Ulthera are relevant to specific jurisdiction.

6

Defendants cite three cases in support of their argument that communications regarding the Ulthera contract are irrelevant to jurisdiction. First, in *CEM Corp. v. Personal Chemistry, AB*, CEM was a North Carolina corporation and Personal Chemistry was a Swedish corporation. 55 F. App'x 621, 622 (4th Cir. 2003). CEM had sued Personal Chemistry in Sweden for patent infringement. *Id.* at 623. Personal Chemistry representatives travelled to North Carolina and negotiated a settlement agreement. *Id.* After Personal Chemistry's board of directors did not approve the agreement, CEM sued Personal Chemistry in North Carolina for breach of the settlement agreement. *Id.* The district court dismissed the complaint for lack of personal jurisdiction, and the Fourth Circuit affirmed. *Id.* at 626. The Fourth Circuit held that the mere formation of the agreement in North Carolina was insufficient for specific jurisdiction, as were other activities regarding the products at issue in the Swedish patent infringement case, because the "dispute at issue" was "the proposed settlement and agreement-in-principle, not contracts involving the sale or advertising of a product, which may be tangentially related to one of the patents at issue in the Swedish patent infringement action." *Id.* at 624–25.

*CEM Corp.* is distinguishable from the present case. In *CEM Corp.*, the alleged breach of the contract at issue (the settlement agreement) occurred in Sweden when Personal Chemistry's board of directors did not approve the agreement. *Id.* at 625. Personal Chemistry's activities in North Carolina were the "sale and advertising of a product" that was only "tangentially related" to the patents at issue in the original suit. *Id.* at 624–25. The North Carolina activities did not constitute a breach of the parties' contract. *Id.* Here, however, if Merz Pharma collaborated with Merz NA in North Carolina to acquire Ulthera without Plaintiffs' involvement, then Merz Pharma's North Carolina activities may constitute a breach of the parties' contract. Therefore, they may give rise to specific jurisdiction.

7

The second case cited by Defendants is *Transcontinental Ins. Co. v. Eastern Steel Constructors, Inc.*, 2008 WL 24665588 (D. Md. June 10, 2008). In that case, C.J. Mahan Construction Company ("Mahan") was the general contractor for a job to be performed in West Virginia. Mahan hired Eastern Steel, a Maryland corporation, as a subcontractor. There was no evidence that the subcontract was negotiated or formed in Maryland. After Eastern Steel's employees were injured while performing the subcontract, a dispute arose as to whether Eastern Steel's insurer, Transcontinental, was obligated to provide coverage to Mahan. Transcontinental sought a declaratory judgment in Maryland that it did not insure Mahan.

The District Court for the District of Maryland held that it did not have personal jurisdiction over Mahan because Mahan's only contact with Maryland was entering into the subcontract with a Maryland corporation. Mahan was not involved in the formation of the contract actually at issue in the case, which was the insurance policy Transcontinental issued to Eastern Steel. Therefore, Mahan had no contacts with Maryland that could subject it to personal jurisdiction in that state.

*Transcontinental* would be apposite to the present case if Defendants were challenging jurisdiction in Arizona. Here, Ulthera is an Arizona corporation, and the central holding of *Transcontinental*—that merely entering into an ancillary contract with a non-party, in-state corporation does not give rise to specific jurisdiction—would apply if Defendants were being haled into court in Arizona. However, Defendants are haled into North Carolina, and Plaintiffs allege that Defendants have more contacts with the forum state than merely entering into an ancillary contract with a North Carolina corporation. Plaintiffs allege that Merz Pharma breached the contract by working with Merz NA in North Carolina to acquire Ulthera. Therefore, Defendants here have more extensive alleged contacts with the forum state than did Mahan in *Transcontinental*, and *Transcontinental* is distinguishable.

8

The third case cited by Defendants is *Southard v. D'Amelio*, No. 3:03-CV-505-W, 2006 WL 3453190 (W.D.N.C. Nov. 28, 2006). In *Southard*, the plaintiff's claim was for breach of contract, and the court held that North Carolina lacked jurisdiction because "[a]ll conduct by Mr. D'Amelio allegedly breaching the Settlement Agreement took place in Massachusetts," and Massachusetts was "the location of the alleged wrongful conduct." *Id.* at *3.

Here, if Plaintiffs show that Merz Pharma collaborated with Merz NA in North Carolina to breach their contract, then the breach would occur, at least in part, in the forum state. In *Southard*, the breach did not occur in the forum state. *See id.* at *3. *Southard* is therefore distinguishable.

In their reply brief, Plaintiffs cite two cases to demonstrate that Defendants' communications with and about Ulthera are relevant. First, in *Universal Leather, LLC v. Koro AR, S.A.*, the Fourth Circuit held that extensive contract negotiations in North Carolina were sufficient for personal jurisdiction over Koro, an Argentinian corporation. 773 F.3d 553 (4th Cir. 2014). Plaintiffs argue that if contract negotiations in the forum state can support personal jurisdiction, then a breach of contract in the forum state should also be sufficient for personal jurisdiction. [DE-176] at 2. The court is satisfied that Merz Pharma's relationship to Merz NA and communications regarding Ulthera in North Carolina are relevant for purposes of limited jurisdictional discovery.

Second, plaintiffs cite *PTA-FLA, Inc. v. ZTE Corp.*, 715 F. App'x 237 (4th Cir. 2017). In that case, the Fourth Circuit held that there was no personal jurisdiction over the defendant in South Carolina. *Id.* at 242. ZTE Corp. had entered into a contract with PTA-FLA, a Florida corporation, to ship goods to South Carolina, but the parties later modified the contract. *Id.* at 240. Under the new contract, ZTE Corp. was to ship the goods to Yakima, Washington and some other unspecified location. *Id.* at 242. ZTE Corp. failed to ship the goods, and PTA-FLA sued in South

9

Carolina for breach of contract. *Id.* The court held that South Carolina could not exercise personal jurisdiction over ZTE Corp. because the claims do not "suggest any contacts with South Carolina related to these particular breaches." *Id.*

Plaintiffs cite *PTA-FLA* for the proposition that "'contacts with [the forum state] related to [a] particular breach' are relevant to the personal jurisdiction inquiry." [DE-176] at 2 (quoting *PTA-FLA*, 715 F. App'x at 242). Although the court in *PTA-FLA* ultimately found that there was no jurisdiction in South Carolina, as Defendants here point out, the analysis in *PTA-FLA* centered on where the breach of contract occurred. *PTA-FLA*, 715 F. App'x at 242. Likewise, here, Plaintiffs seek to prove that Merz Pharma breached their contract by working with Merz NA in North Carolina to acquire Ulthera. Communications between Defendants, and between Defendants and Ulthera, are therefore relevant to jurisdiction.

It is Defendants' burden to show that Plaintiffs' requests would not yield information relevant to specific jurisdiction. Defendants have failed to do so. Plaintiffs seek Merz Pharma's communications with Merz NA and Defendants' communications with Ulthera to show that Merz Pharma collaborated with Merz NA in North Carolina to acquire Ulthera in breach of Defendants' contract with Plaintiffs. The communications are relevant to specific jurisdiction, and Defendants must produce them. Defendants are ordered to fully respond to Plaintiffs' Second RFP five, seven, eight, nine, thirteen, fourteen, fifteen, and seventeen, except to the extent that those requests are duplicative, as previously resolved in the court's August 8, 2018 order, and except to the extent that requests seven and eight reference unspecified Merz entities, as discussed below.

**B. The unspecified Merz entities**

Requests one, seven, and eight seek information related to "Merz" or "other Merz affiliated entities." "Merz" is defined in the Second RFP as "all business entities that are affiliated through

10

inter-company equity ownership, trademark licensing of the Merz tradename, or product distribution agreement." [DE-151-3] at 3. Defendants argue that Merz entities aside from Merz NA and Merz Pharma are irrelevant to specific jurisdiction, and the unspecified "other Merz affiliated entities" are ambiguous.

Plaintiffs contend that they "are entitled to discover if there are other direct and indirect affiliations between Defendants and other Merz entities that may have ties to North Carolina, or may have been created to effectuate the purchase of Ulthera." [DE-171] at 7. However, there has been no showing as to other such entities or that other unspecified Merz entities would yield relevant material. While Merz Pharma's relationship to and collaboration with Merz NA is relevant to Merz Pharma's contacts in North Carolina, Plaintiffs have failed to demonstrate how the existence of any other Merz affiliated entity or the relationship between Defendants and other Merz affiliated entities is relevant to the claims or defenses asserted in this case. Accordingly, Plaintiffs' motion is denied as to requests one, seven, and eight to the extent that such requests seek responses relevant to "any other Merz affiliated entity" (Second RFP 1) or "Merz" (Second RFP 7 and 8). Otherwise, Plaintiffs' motion is allowed and Defendants are ordered to fully and completely respond to requests one, seven, and eight.

## C. Jonathan Parrish's email accounts

In request eighteen, Plaintiffs seek "all documents and communications regarding any email system used by Jonathan Parrish to communicate with Merz NA and/or Merz Pharma personnel between August 2013 and August 2014, including but not limited to any duplication or shared email between jonathan.parrish@merz.de and jparrish@merzusa.com." [DE-151-3]. Defendants have objected to this request on grounds of vagueness and ambiguity because the meaning of the phrase "regarding any email system" was unclear. [DE-170-1]. Defendants

11

contend that during the meet and confer, they asked for clarification, and "Plaintiff's counsel expressed a desire to understand how Parrish was able to swear that the email mentioned in the complaint was received by his German email account." [DE-172] at 9. Defendants offered to produce the relevant metadata. *Id.* Conversely, Plaintiffs interpret request eighteen as asking for "documents explaining how emails where [sic] shared (automatically or otherwise) between the two email accounts Mr. Parrish maintained." [DE-171] at 7 n.5. Plaintiffs state that they are "entitled to determine how the email accounts utilized by Mr. Parrish were set up so as to be synchronized or interconnected and/or how emails were shared." *Id.*

The interconnectedness of Mr. Parrish's email accounts is relevant to jurisdiction insofar as it may demonstrate how Mr. Parrish's services were used by Merz Pharma in North Carolina during the acquisition of Ulthera. However, request eighteen appears overbroad, vague, and ambiguous as drafted when the text of the request is compared with the discovery definitions. The definition of "documents" in Plaintiffs' Second RFP includes emails, as does the definition of "communications." [DE-151-3] at 1–2. The word "regarding" is not defined, and it is unclear from the text of request eighteen whether Plaintiffs are asking for all of the emails (which are both documents and communications) contained in the two accounts.

In any event, Plaintiffs have clarified that they seek only documents explaining how the email accounts are connected and how emails are shared between the accounts. [DE-171] at 7 n.5. As modified, the request is sufficiently narrow, and the court will construe the request as modified. Defendants are directed to produce documents explaining how the two accounts are connected.

**D. Plaintiffs' requests regarding communications with Coste and Polakov**

Requests eleven and twelve refer to the December 6th meeting in Germany and communications with Coste and Polakov. In request eleven, Plaintiffs seek "all documents and

12

communications concerning any meeting or communication with Coste or Polakov" relating to the acquisition of companies discussed at the meeting. Request twelve seeks "All Documents and Communications concerning any information relating to Ulthera that was provided by Coste or Polakov to Merz Pharma and Merz NA the December 6th meeting."

Defendants objected to request eleven on the grounds of overbreadth and relevance. They objected to request twelve on the grounds of vagueness, ambiguity, and relevance.

## 1. Relevance

As discussed above, it appears Plaintiffs seek to establish personal jurisdiction over Merz Pharma by showing that Merz Pharma collaborated with Merz NA in North Carolina to acquire Ulthera in breach of their contract with Plaintiffs. The December 6th meeting may have occurred in Germany, but communications regarding what was discussed at the meeting could establish that the companies worked together in North Carolina to acquire Ulthera. Additionally, the information provided by Plaintiffs to Defendants about Ulthera is the subject matter of the contract, so any communications concerning that information may also establish that Defendants collaborated in North Carolina to breach the contract. Thus, requests eleven and twelve are relevant to jurisdiction.

## 2. Overbreadth

In their memorandum, Defendants assert that they have already responded to the requests and, at the meet and confer, Plaintiffs "contended that the search terms and custodians previously used were insufficient." [DE-172] at 10. Plaintiffs state in their memorandum that the parties agreed that "Defendants could produce documents in tranches, i.e., a group of custodians at a time." [DE-171] at 10. Plaintiffs assert that Defendants must produce documents from "other custodians," but Plaintiffs do not list specific custodians from whom they are missing documents.

13

*Id.* It appears to the court that Plaintiffs seek more information than Defendants have provided, but Plaintiffs have not named additional custodians.

As a practical matter, Defendants cannot search every email inbox of every employee. Rule 34 requires that requests for documents "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). That requirement is particularly important in electronic discovery, where parties must search through vast amounts of data.

It appears that the parties have at least attempted to narrow a list of custodians. Plaintiffs' counsel sent an email to Defendants' counsel summarizing what was discussed at the meet and confer. [DE-172-1] at 4. In the email, Plaintiffs' counsel states:

> Unless otherwise noted below, the email custodians for Merz NA is Mr. Parrish and his assistant. Unless otherwise noted below, the email custodians for Merz Pharma are Mr. Buchard, Mr. Bergler and their respective assistants. Unless otherwise noted below, the relevant search terms are "Polakov," "Coste," "Ulthera," and the other companies referenced in the presentation attached to the complaint.

*Id.* Plaintiffs' counsel agreed to narrow the time frame for requests eleven and twelve, and he stated, "The expanded custodian list we agreed to for the corresponding Merz NA document searches also apply." *Id.*

For requests eleven and twelve, it appears to the court that the parties engaged in a meaningful meet and confer and reached an agreement as to the custodians and search terms for electronic discovery. In accordance with their good-faith obligation to attempt to resolve discovery disputes without court action, Defendants should honor any agreement reached with Plaintiffs at the meet and confer. At this time, however, it is unclear whether Defendants have failed to do so. Defendants allege that they responded to the requests, and Plaintiffs seek information from additional custodians, but Plaintiffs have not stated whether they seek information from custodians listed in the agreement or other custodians not previously named. If

the custodians listed in the parties' agreement memorialized in the December 25, 2017 email are insufficient, Plaintiffs should specify additional custodians. At this time, the court declines to compel Defendants to respond to requests eleven and twelve when it is unclear whether Defendants have already done so and it is uncertain from which custodians Plaintiffs seek additional documents.

### 3. Ambiguity

Plaintiffs seek "All Documents and Communications concerning any information relating to Ulthera that was provided by Coste or Polakov to Merz Pharma and Merz NA [sic] the December 6th meeting." [DE-151-3]. There is a preposition missing between "Merz NA" and "the December 6th meeting." The missing preposition would narrow the scope of the request considerably. Because request twelve is overbroad, as discussed above, and because the missing preposition renders it ambiguous, the court declines to compel Defendants to fully and completely respond to request twelve.

### E. Plaintiffs' remaining requests

Defendants have objected to requests two, three, and four. Those requests seek information regarding the organizational relationship between Defendants and any agreement to co-employ Jonathan Parrish. Defendants objected on grounds of vagueness, ambiguity, and overbreadth. [DE-170-1] at 3–4. However, Defendants offered to produce an organizational chart showing the relationship between Merz Pharma and Merz NA; documents showing ownership of Merz NA by Merz Pharma, subject to the entry of a protective order; and any actual agreements to share the services of Jonathan Parrish, also subject to the entry of a protective order. *Id.* On October 11, 2018, the court granted Defendants' joint motion for a protective order. [DE-175].

15

In their responses to the Second RFP, Defendants claimed that the term "divisions" was vague and ambiguous, [DE-170-1] at 3, and Plaintiffs briefly noted the issue in their motion to compel. [DE-170] at 3. However, Defendants have not mentioned the ambiguity in their memorandum, and it is Defendants' burden to show why discovery should be denied. Defendants are therefore required to stand by their offer to produce an organizational chart, documents showing Merz Pharma's ownership of Merz NA, and actual agreements to co-employ Jonathan Parrish, subject to the protective order.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Complete Document Production [DE-170] is ALLOWED in part and DENIED in part. Defendants are ordered to comply with this order within fourteen (14) days.

So ordered, the 5th day of December 2018.

Robert B. Jones Jr.
United States Magistrate Judge